IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1866.

## Delaware Division Canal Company *versus* McKeen.

1. In cases where the law.gives an appeal, the Supreme Court will not examine the merits of an award, inquisition, appraisement or similar finding.

2. But an error apparent on the record may be corrected in the Supreme Court, and the power is not limited to the absence of a right of appeal.

3. The provision of the Act of 1858, for the sale of the canals to the Sunbury and Erie Railroad Company, which requires the purchaser to pay claims for damages, &c., includes only such damages as it was the duty of the Commonwealth to pay.

4. There was no legislation requiring the Commonwealth to pay for consequential damages, and the.purchaser of the Delaware Division of the state canals was not liable for damages by the backing of water caused by a dam at the mouth of the Lehigh raised by the canal commissioners.

ERROR to the Court of Common Pleas of *Northampton county*.

There were several writs of error, considered together, involving the same principles, the proceedings in the court below having been commenced by petitions exactly similar in all the cases.

James McKeen, by his petition, set forth that the Delaware Division Canal Company, the plaintiffs in error, purchased the Delaware Division of the Pennsylvania Canal under the Act of April 21st 1858, for the sale of the state canals; that at the time of the sale he had a just claim against the Commonwealth for damages to his lands, water-power, &c. The damages were occasioned by the Commonwealth raising the dam at the mouth of the Lehigh river in 1840 and 1841, higher than it was first constructed, whereby the water of the river was backed on the lands, water-power, &c. ; and prayed for viewers, under the Act of March 26th 1860, for assessing, &c., damages on the Delaware Division.

Before the viewers it appeared, by evidence submitted to them, that this petitioner, with others, had applied in 1842 to the canal

(117)

[Delaware Division Canal Co. *v.* McKeen.]

commissioners for damages for *one year* to their mills, &c., by the erection of this dam; but the canal commissioners resolved that the damages should not be allowed, because the advantages were equal to the disadvantages. In 1856 they petitioned the canal commissioners " to abate the nuisance," occasioned by raising the dam, and submitted a written argument by their counsel, Hon. J. M. Porter.

The same gentleman wrote to one of the canal commissioners, asking to lay evidence of the circumstances before the board. This canal commissioner replied to Mr. Porter, that in March or April 1857 the board would visit the premises to view and take testimony.

The viewers reported, assessing McKeen's damages at $3473.40.

The following exceptions were filed to the report :—

1. The claim of the plaintiff being purely and exclusively for consequential damages caused by the alleged flooding of water back upon his lands and mill, and there being no legislation directing either the Commonwealth or the defendant to pay any claims for consequential damages, the viewers should have reported and awarded in favour of the defendant, and erred in reporting in favour of the plaintiff.

2. The plaintiff having, in the year 1842, after the dam of 1841 was erected and completed, preferred his claim for damages, alleged to have been occasioned by the erection of said dam, to the Board of Canal Commissioners of the Commonwealth of Pennsylvania, who, on the 1st of July 1842, rejected and disallowed the claim, this adjudication by the canal commissioners was a final determination, by which the plaintiff is precluded from recovering any damages for that erection or its maintenance, and therefore, the viewers, before whom the said adjudication was fully proved, should have reported and awarded in favour of the defendant.

The evidence before the viewers was submitted to the court on the hearing of the exceptions.

The court overruled the exceptions, and directed judgment on the report.

The errors assigned were, overruling the exceptions and entering judgment on the report.

*B. H. Brewster* and *H. Green*, for plaintiff in error.—The alleged liability of defendant is on the Act of May 21st 1858, § 7, P. L. 414, providing that claims for damages against the Commonwealth by purchasers of the state works, shall be paid by the purchaser—the amount to be ascertained as the legislature may direct—the purchaser to have notice of such claims. The Act of 1860 merely provides the means of enforcing this claim. 1. The Commonwealth was not liable. The damages alleged by

the bill, were for raising the dam, by which the water was backed·
on the plaintiff. These were *consequential.* The Act of April 9th
1830, P. L. 218, limits the damages to cases where the canal, &c.,
passed through private property; so the Act of February 19th
1849, P. L. 84, extended to canal companies by Act of May 5th
1855, P. L. 450. The authorities prove that there is no liability
for consequential damages: Susquehanna Canal Co. *v.* Wright,
9 W. & S. 9; Philadelphia and Trenton Railroad Co., 6 Wh. 25;
Henry *v.* Pittsburgh and Allegheny Bridge Co., 8 W. & S. 85;
Monongahela Navigation Co. *v.* Coons, 6 Barr 379; Watson *v.*
Pittsburgh and Connelsville Railroad Co., 1 Wright 469; McKeen
*v.* Delaware Division Canal Co., 13 Wright 427; Reitenbaugh *v.*
Chester Valley Railroad Co., 9 Harris 105; O'Conner *v.* City of
Pittsburgh, 6 Harris 187; Clark *v.* Birmingham Bridge Co.,
5 Wright 147; New York and Erie Railroad Co. *v.* Young,
9 Casey 175. There was therefore no claim against the Common-
wealth; she had maintained this dam seventeen years, and always
refused damages for it.

2. The Commonwealth inflicted the injury under her right of
eminent domain; she gave the plaintiff no right to compensation.
The defendant did not inflict an injury, she merely bought a title.
There might be claims for which the Commonwealth was properly
liable—these the law said the purchasers should pay. The *crea-
tion* of a fresh liability will not be presumed, when the language
describes a liability existing.

The obligation to pay consequential damages is·not within the
letter of the act, and therefore does not exist: Monongahela
Navigation Co. *v.* Coons, 6 W. & S. 114; s. c. 6 Barr 382; New
York and Erie Railroad Co. *v.* Young; Susquehanna Canal Co.
*v.* Wright; Reitenbaugh *v.* Chester Valley Railroad Co.; Henry *v.*
Pittsburgh and Allegheny Bridge Co.; Watson *v.* Pittsburgh and
Connelsville Railroad Co.; Act of April 6th 1830, *supra.* The
liability of the Commonwealth was therefore limited to cases
where the canal .passed through the land of the citizen. Then,
if it was to be changed, it would have been done by clear and
unmistakeable language. Where corporations are authorized to
take property, it is right they should pay for it, but there is no
obligation to this where duties are *imposed,* instead of privileges
*conferred:* Yost's Appeal, 5 Harris 531. Here the company was
simply required to perform a duty, to wit, to pay the debts of the
Commonwealth.

The argument of counsel, and ground of the court below, were
that the Act of 1858 requires payment of " all claims for damages
and other demands against the Commonwealth." In the case of
Monongahela Navigation Co. *v.* Coons, 6 Barr 379, there was
especial provision in the additional act for damages for *overflow-
ing lands.* In Mifflin *v.* Railroad Co., 4 Harris 182, there was

[Delaware Division Canal Co. *v.* McKeen.]

also distinct provision for consequential damages. To allow such damage, the liability must clearly appear by the act: Sunbury and Erie Railroad Co. *v.* Hummell, 3 Casey 99. In Schuylkill Navigation Co. *v.* Loose, 7 Harris 15, the liability was expressly imposed. In Buckwalter *v.* Black Rock Bridge Co., 2 Wright 281, there was a distinct provision for damages to a ferry by reason of the erection of the bridge. Here there could be no damage that was not consequential; and there is no reference to the plaintiff's property specially; the act applies to " any of the divisions of canal sold," &c. The words are not, " claims for any and all damages," &c., but " any and all claims for damages," &c. The " any and all" refer to " claims," not to " damages." There being a class of damages which the law recognises, and one which it does not, the import is that *legal* damages are to be paid: Dwarris on Stat. 695–703; Rex *v.* Ramsgate, 6 B. & C. 712; Jones *v.* Smart, 1 T. R. 52; Rex *v.* Barham, 8 B. & C. 104; Coe *v.* Lawrance, 1 Ell. & Black. 520; Reg. *v.* Walford, 9 Ad. & Ell. 635; Pennsylvania Railroad Co. *v.* Duquesne Borough, 10 Wright 228; Denn *v.* Diamond, 3 B. & C. 245; Casher *v.* Holmes, 2 B. & Ad. 597.

There is no necessary *implication* to pay in this act, for there were no existing liabilities.

The proviso shows that such claims were not intended. It says, the liability " shall not relate to any obligation, &c., incurred for construction, &c., for the present year, or prior to the time of transfer." Being liable then to pay only those prior to that year, and consequential damages were not such liabilities against the Commonwealth, the defendants were not bound to pay them.

The canal commissioners were the only tribunal to decide this claim when against the Commonwealth. They decided it, and that was final: Com. *v.* Beatty, 1 Watts 382; Ligat *v.* Com., 7 Harris 456; Huston *v.* Longstreth, 7 Leg. Int. 14.

*H. D. Maxwell* and *E. J. Fox*, for defendant in error.—The plaintiff in error has no standing in court on a writ of error to the judgment on a report of viewers; their remedy is by appeal: Le Barron *v.* Harriott & Bennett, 2 Pa. Rep. 154; Sullivan *v.* Weaver, 9 Barr 223. The evidence cannot be brought up: Union Canal Company *v.* Keiser, 7 Harris 134; Winebiddle *v.* Penna. Railroad Company, 2 Grant 32; Church *v.* Northern Central Railroad, 9 Wright 339.

How can this court determine upon the exceptions? The court presumes the viewers acted rightly. There is no evidence that the canal commissioners have acted on these claims.

The 7th section of Act of 1858 is in the broadest terms. The state had recognised her duty to compensate for consequential as

[Delaware Division Canal Co. v. McKeen.]

well as direct damages in many instances. The purchaser of any part of the state works was to pay for "any and all claims for damages." What was required was to establish the fact of damages of any kind, and then the purchaser was to pay. "Any and all" governed the whole sentence:" Dwarris on Stat. 49.

Monongahela v. Koons, 6 W. & S. 601, and other cases referred to, have no applicability. The requirement to pay "*any*" damage, covers consequential damages: Buckwalter v. Black Rock Bridge Company, Mifflin v. Railroad Company, *supra*. The naming of the party damaged is not necessary; the Commonwealth could not get knowledge of all persons injured. The Act of 1858 is the organic law of the plaintiffs in error; they are subject, therefore, to all its requirements: Buckwalter v. Black Rock Bridge Company, Monongahela Company v. Coons, 6 Barr 379; Mifflin v. Railroad Company, *supra*. Compensation clauses are to be liberally construed: Sunbury & Erie Railroad Company v. Hummel, 6 Casey 104; 2 Watts 418; 2 Q. B. 347; 10 M. & W. 425–6; Id. 699. So Schuylkill Navigation Company v. Loose, *supra;* 2 Inst. 152, 249, 395, 572, 43, 680, 291, 346, 427, 429, 476, 502, 681, 280, 56; Hob. 122, 157, 299. Here the plaintiffs had been heavily damaged; they had complained to the state authorities, and hopes had been held out to them of redress; the Act of 1858 directed the purchaser to pay. The Act of 1830 did not apply to the Delaware Division, but to the Pennsylvania Canal, which refers to the canal from Harrisburg to Pittsburgh. The Act of 1827 provided for damages caused by the canal "interfering in any manner with the rights of property." It is not necessary that the canal should pass through the land: Com. v. Snyder, 2 Watts 418. A dam and pool are part of the necessary works of a canal. The lands of the plaintiffs are proved to border on the canal. The suit, McKeen v. Delaware Division Canal Company, 13 Wright, was for continuance of a nuisance. The decision of the canal commissioners was on a claim for one year's damages. It cannot be said for what the viewers gave damages; it may be for erections of stone, and since 1841. The adjudication, if it was one, was without notice or hearing. The constitutions, both of United States and Pennsylvania, imply a right for a party to have notice to appear and answer, and to a remedy in court: Erwin's Appeal, 4 Harris 257.

But a decision by the canal commissioners may be opened: Baltimore & Susquehanna Railroad Company v. Nesbit, 1 Am. R. R. Cas. 35, 10 How. 395, While the case was pending before the canal commissioners, the public works were sold. Besides, they had no power over such damages as these; they had power over damages only where the improvement passed through the land. The legislature has given this power in several individual

[Delaware Division Canal Co. *v.* McKeen.]

cases found in the statute-books, showing that they had it not unless so given.

The opinion of the court was delivered, March 26th 1866, by

AGNEW, J.—It is very true, as has been well argued by the counsel of the defendant in error, that it has often been decided this court will not review or re-examine the merits of an award, inquisition, appraisement or similar finding, and the remedy for errors committed in these cases is by appeal only, if it be given by the law under which the proceeding takes place. But the power of the court extends to the examination and correction of all and all manner of errors of the justices, magistrates and courts of this Commonwealth in the process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, as the law doth or shall direct: Act 16th June 1836, § 1. If, therefore, an error be found in the record of any proceeding in a lower court, our power to correct it is clear, and is not limited by the absence of a right of appeal. It does not touch the merits of the controversy, but the legality of the proceeding. In this case the error is apparent in the record, if the cause set forth in the petition for damages is not the subject of compensation.

The claim, as set forth in the petition, is very clearly and distinctly stated to be founded upon injury caused by backing the water of the Lehigh upon the lands, water-power and machinery of the petitioner, doing him great injury and damage. The reflux of the water caused by the erection of the dam is but a consequence of that act, and the damages are termed consequential in contradistinction to those which arise out of a direct entry upon and appropriation of land or materials. The distinction between direct and consequential injuries grows out of the constitutional duty to make compensation upon taking private property for public use, and only becomes material when the Commonwealth has omitted to make provision for the indirect injuries in consequence of her acts, compensation for the latter being of grace, and not of right. If there was no authority, therefore, to award damages for the subject-matter set forth in the petition, the error appears in the record, and we must correct it.

The liability of the Delaware Division Canal Company, if any, depends, first, on the proper interpretation of the 7th section of the Act of 21st of June 1858 (P. L. 419), for the sale of the canals of the state to the Sunbury and Erie Railroad Company; and, secondly, upon the antecedent legislation of the Commonwealth in relation to damages upon this division of the canals.

The strength of the argument, to deduce a liability from the 7th section of the Act of 1858, fastens itself upon the generality of the words, " any and all claims for damages or other demands

against the Commonwealth." Unquestionably the legislature intended every claim to be preferred and considered. Its object was to shut out no one from a hearing. But the operative words which fix the character of the claim are, " *if established.*" It is only the established claims the section orders the purchaser to pay, and as an evidence of the sense in which these words are used, it further declares, " but in any case the purchaser shall have notice and an opportunity to be heard against the allowance of such demands." What is meant by establishing a claim or demand? Certainly it is to show the right to have it allowed. The right, therefore, must be shown, and this right depends on the duty to pay.

The obligation is the correlative of the right, and both must exist in order to establish the demand. If the Commonwealth was under no duty to pay, it is clear the claimant had no right to have his damages allowed. It is only by striking out the words " if established" the section can be made to require payment of all claims of every kind. The 7th section is not to be read alone or apart from the main intent of the whole act. The 5th section declares, " That the said company, their successors and assigns, shall hold, possess, use and enjoy the said property free and discharged from all encumbrances, except as provided in this act." The term encumbrances, and the intent that the purchase should be enjoyed free of aught else, tend strongly to determine the character of the demands which were first to be established and then allowed.

There were therefore encumbrances—obligations which the Commonwealth owed or was bound for, and which she therefore required the purchaser to pay. Aside from the language of these sections, the leading design of the law sheds light on the particular provision. It is not a grant of privileges imposing duties as their consideration, but an offer of sale with terms to invite acceptance. It was not the interest of the Commonwealth, and therefore not her motive, to impose burdens which must repel. Indefiniteness in the terms and uncertainty in the encumbrances would tend to defeat her purpose. If we interpret the provision to mean any claim which referees might think it proper to allow, the burden is indefinite, and such as a purchaser would decline. If it mean a new class of liabilities undefined in the law, the uncertainty will create distrust. This division of the public works having existed almost a generation without a thought by the Commonwealth that her justice demanded a recognition of these supposed equities, there was no reason she should adopt them to the prejudice of her contemplated sale. When she said, therefore, that the purchaser of her canals should have title free of all encumbrances except those imposed in the act, and declared that those claims only should be allowed which should be estab-

[Delaware Division Canal Co. *v.* McKeen.]

lished, we must conclude she intended only such as were existing obligations.

We are next brought to consider what injuries to private property were the subject of compensation in 1829–30, when the dam was erected, and in 1840–41, when it was rebuilt and heightened. Under the Act of 9th April 1827 (P. L. 192), this injury, had it then existed, would have been compensated as "interfering with the petitioner's right of property." But the law confined its operations to the completion of the work, or within one year thereafter, and what is decisive is that the injury averred in the petition is the consequence of raising the dam in 1840–41, and not of the original structure. The legislature, by the Act of 6th April 1830 (P. L. 218), changed the law as to damages, conferring upon the canal commissioners the power to adjust all claims, with a right to appeal to appraisers if the claimant be unwilling to accept the offer of the commissioners, and confining the subject of damages to "cases where injury has been or may be done to private property by reason of the Pennsylvania Canal or Railroad passing through the same, or by taking of any materials on said canal or railroad."

It is argued this law did not extend to the Delaware Division of the Pennsylvania Canal, but the act on its face shows that it was not confined to the "main line," and as the name of this and other divisions informs us, we know that the Pennsylvania Canal was composed of many divisions. It is unnecessary, however, to resort to argument, as the legislature in 1832, following up the interpretation and acts of the commissioners, made the Act of 1830 applicable to the Delaware Division. The resolution of 10th April 1832 (P. L. 637), after reciting the appraisement of damages upon this division in September 1831, under the Act of 6th April 1830, and the death of one of the appraisers before the record was completed, made valid the report signed by two of the appraisers instead of three, and directed payment accordingly. This was followed by the resolution of 5th May 1832 (P. L. 642), extending the provisions of the former resolutions to every division of the canal and the railroad. With these acts in our view, it cannot be denied that the Act of 1830 and its supplements were the rule for the assessment of damages, and continued to be in 1840–41. The legislation then existing did not embrace a case of consequential injury. This seems to have been the view of the petitioners themselves, as we find them uniting in their petition to the canal commissioners in 1842, and after its refusal by the board in the same year they suffered the matter to drop. Thus it rested until 1856, when an attempt was made through a very influential gentleman to enlist the board in favour of compensation. The subject was under consideration about a year, and a report made against it by a competent engineer. The petitioners

[Delaware Division Canal Co. *v.* McKeen.]

manifestly hoped to obtain a favourable consideration by the canal board, whose recommendation doubtless would have secured payment by the legislature.

That the flooding of land by reflow from a dam built on the property of another is a consequential injury; and the rule that such an injury cannot be compensated without legislative provision, have been established in numerous decisions: Monongahela Navigation Co. *v.* Coons, 6 W. & S. 101; Susquehanna Canal Co. *v.* Wright, 9 Id. 9; Monongahela Navigation Co. *v.* Coons, 6 Barr 379; Philadelphia and Trenton Railroad Co., 6 Whart. 25; Henry *v.* Pittsburgh and Allegheny Bridge Co., 8 W. & S. 85; District of City of Pittsburgh, 2 Id. 320; Watson *v.* Pittsburgh and Connellsville Railroad Co., 1 Wright 469; McKeen *v.* Delaware Division Canal Co., 13 Wright 519.

As to the cases referred to by defendant in error, all may be disposed of by the single observation that they admit the principle just stated, and rest upon legislation which comprehended the injury; and that compensation for indirect injuries may be given of grace, no one disputes.

We are of opinion that the court below ought not to have allowed these claims; and the error appearing in the record, the judgment of confirmation must be reversed and the proceedings set aside. The same judgment to be entered in all the cases.